ORIGINAL

FILED
JUN 20 2008
U.S. COURT OF FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DCMS-ISA, Inc., a Service Disabled Veteran Small Business and a Joint Venture<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | USCFC NO. 08-456 C<br><br>APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION: POINTS AND AUTHORITIES; DECLARATION OF WILLIAM L. BRUCKNER<br><br>(BID PROTEST) |

1. Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and RUSCFC 65, Plaintiff DCMS-ISA, Inc. ("DCMS-ISA") moves this Court for a Temporary Restraining Order, ("TRO"), enjoining and restraining Defendant, THE UNITED STATES OF AMERICA, acting by and through the Department of Homeland Security ("DHS"), Immigrations and Custom Enforcement, Federal Protective Service, Denver Federal Center, Denver, Colorado, which is, and at all times herein mentioned was, an agency of the United States from issuing a Notice to Proceed (an "NTP") or authorizing the General Services Administration ("GSA") to issue a task order on Solicitation HSCEW8-08-R-00004 requesting proposals for Colorado Armed Guard Services (hereinafter the "SOLICITATION") pending the outcome of DCMS-ISA's pre-award bid protest.

2. The SOLICITATION was for armed guard services for 50 buildings across 10 cities in the Denver, Colorado area on a recurring basis. The SOLICITATION anticipated 350,000 productive guard hours per year for a one-year base period with four one-year options. The SOLICITATION was a request for proposals ("RFP") and a set aside for bidding only by service-disabled veteran-owned small businesses. The entire SOLICITATION is voluminous and therefore only selected relevant portions are attached to the Complaint filed in this action. *Attachment 2 to Complaint.*

3. On or about February 26, 2008, DCMS-ISA timely submitted its proposal (the "PROPOSAL") to the DHS. *Attachment 4 to Complaint.* It is alleged, on information and

belief, that multiple SDVOSB's submitted proposals in response to the SOLICITATION, but the DHS has refused to provide that information without a FOIA request. *Attachment 5 to Complaint.*

4. On or about May 20, 2008, without discussions with any offerors, the DHS issued Amendment 000003, canceling the SOLICITATION allegedly because no SDVOSB offeror possessed relevant past performance experience. On information and belief, DCMS-ISA believes and therefore alleges that the work required by the SOLICITATION is to be awarded by issuing a task order under a GSA schedule contract on or after July 14, 2008. *Attachment 6 to Complaint.*

5. In the alternative, if the DHS has already authorized the GSA to issue a contract to a currently unknown entity, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and RUSCFC 65, Plaintiff DCMS-ISA moves this Court for a Temporary Restraining Order ("TRO"), enjoining and restraining Defendant DHS from continuing to allow the currently unknown entity to proceed with the work on the SOLICITATION pending the outcome of DCMS-ISA's pre-award bid protest.

6. Additionally, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and RUSCFC 65, DCMS-ISA moves this Court for a preliminary injunction ("PI"), pursuant to a hearing set by this Court as to whether the DHS should be enjoined and restrained from issuing an NTP on the SOLICITATION pending this Court's adjudication of DCMS-ISA's action for Declaratory Judgment.

7. Additionally, in the alternative, if an NTP has been already issued to a currently unknown entity, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and RUSCFC 65, DCMS-ISA moves this Court for a preliminary injunction ("PI"), pursuant to a hearing set by this Court as to whether DHS should be enjoined and restrained from allowing the currently unknown entity to proceed with the work on the SOLICITATION, pending this Court's adjudication of DCMS-ISA's action for Declaratory Judgment.

//

//

8. This Application is made on the grounds that immediate and irreparable injury will result to DCMS-ISA unless the activity described above is enjoined pending adjudication of DCMS-ISA's action for Declaratory Judgment. This Application will be based on this Application, Memorandum of Points and Authorities, the Declaration of William L. Bruckner and documents attached to the Complaint in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.

### STATEMENT OF THE LAW

9. Both the Tucker Act, 28 U.S.C § 1491(b)(2) (2000) 28 U.S.C. § 1491(b)(2) (2000), and RCFC 65 grant the United States Court of Federal Claims the authority to issue temporary restraining orders and preliminary injunctions. Preliminary injunctive relief is an extraordinary and drastic remedy. *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam); *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993). The standards for obtaining emergency relief, such as a temporary restraining order, are identical to those that must be satisfied before a preliminary injunction may be issued. *Four Rivers Invs., Inc. v. United States,* 77 Fed.Cl. 592, 594-95 (2007). The moving party must demonstrate that: (1) it has a likelihood of success on the merits; (2) it will suffer irreparable harm if preliminary relief is not granted; (3) the harm it will suffer outweighs the harm to the government and to third parties; and (4) the grant of relief is not contrary to the public interest. *Id.; see also FMC Corp.*, 3 F.3d at 427; *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952 (Fed.Cir.1990); *Hosp. Klean of Tex., Inc. v. United States,* 65 Fed.Cl. 618, 625 (2005). "No one factor, taken individually, is necessarily dispositive.... [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427.

//

//

//

B.

## STATEMENT OF THE FACTS

10. On or about February 19, 2008, the DHS issued Solicitation HSCEW8-08-R-00004 requesting proposals for Colorado Armed Guard Services (hereinafter the "SOLICITATION"). The SOLICITATION was for armed guard services for 50 buildings across 10 cities in the Denver, Colorado area on a recurring basis. The SOLICITATION anticipated 350,000 productive guard hours per year for a one-year base period with four one-year options. The SOLICITATION was a request for proposals ("RFP") and a set aside for bidding only by service-disabled veteran-owned small businesses. The entire SOLICITATION is voluminous and therefore only selected relevant portions are attached to this Complaint. *Attachment 2 to Complaint.*

11. Amendment 000001 to the SOLICITATION, in addition to responding to questions that DHS had received, established March 1, 2008, as the due date for electronic proposals and March 4, 2008, as the due date for hard copies of proposals. *Attachment 3 to Complaint.*

12. On or about May 20, 2008, without discussions with any offerors, the DHS issued Amendment 000003 to the SOLICITATION, canceling the SOLICITATION allegedly because no SDVOSB offeror possessed relevant past performance experience. The work required by the SOLICITATION is to be awarded by issuing a task order under a GSA schedule contract on or after July 14, 2008. *Attachment 6 to Complaint.*

13. Thereafter, Mr. Wayne Procell of DCMS-ISA contacted DHS to obtain a debriefing on DHS' rejection of DCMS-ISA's proposal. On May 30, 2008, DHS, after refusing DCMS-ISA's request for a formal debriefing, advised DCMS-ISA that DHS had rejected all SDVOSB proposals because none of the SDVOSB offerors had relevant past performance experience. *Attachment 7 to Complaint.*

14. The current incumbent providing the same services required by the SOLICITATION is AM-GARD, INC. *Attachment 3 to Complaint.* DCMS-ISA, in addition to its own relevant past performance experience, submitted the experience of AM-GARD, INC.

under a "teaming arrangement", whereby AM-GARD, INC. would subcontract a substantial portion of the services to be provided and the remainder would be provided by DCMS-ISA. DCMS-ISA, in addition to its own management and employees, intended on utilizing former AM-GARD, INC. employees and some of AM-GARD, INC.'s management. The SOLICITATION and the FAR contemplate just such teaming arrangements. Amendment 00001 and Section L of the SOLICITATION expressly allows the "teaming arrangement" to contribute to relevant past performance. *Attachments 2 & 3 to Complaint.* In fact "teaming arrangements" are encouraged by the Small Business Administration on Solicitation such as this one where the SDVOSB's are emerging businesses. *48 C.F.R. 9.602.*

15. Stated more simply, the DHS rejected DCMS-ISA's proposal for armed guard services as "too risky" when DCMS-ISA's proposal clearly states that it will utilize, in substantial part, the same armed guards that are currently guarding the Colorado facilities.

16. The SOLICITATION contemplates and in fact, encourages, just the teaming arrangement proposed by DCMS-ISA. Since the DHS rejected DCMS-ISA's proposal expressly by refusing to consider the extremely relevant past performance experience of the teaming arrangement between DCMS-ISA and AM-GARD, INC., the decision of the DHS to reject all SDVOSB proposals was arbitrary and capricious and not in accordance with the express representations of the SOLICITATION and the FAR and must be reversed.

## C.

## ARGUMENT

## DCMS-ISA IS ENTITLED TO THE ISSUANCE OF A TEMPORATY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

17. DCMS-ISA will prove that DHS rejected DCMS-ISA's proposal for armed guard services as "too risky" in clear violation of the terms of the SOLICITATION and federal law. The SOLICITATION contemplates and in fact, encourages, just the teaming arrangement proposed by DCMS-ISA. Since the DHS rejected DCMS-ISA proposal expressly by refusing to consider the teaming arrangement between DCMS-ISA and AM-GARD, INC., the decision

of the DHS to reject all SDVOSB proposals was arbitrary and capricious and not in accordance with the express representations of the SOLICITATION and the FAR and must be reversed. *Attachments 6-10 to Complaint.*

1. **<u>DCMS-ISA Will Suffer Severe Harm If A Temporary Restraining Order And A Preliminary Injunction Is Not Issued</u>**

18. DCMS-ISA will suffer irreparable injury unless the Temporary Restraining Order and Preliminary Injunction sought in this case are immediately granted. Monetary damages will not be sufficient to address this harm. The denial of the right to be awarded a contract from the SOLICITATION and have its proposal fairly and lawfully considered constitutes irreparable harm. Additionally, the loss of a major contract is considered to cause irreparable harm when the bid is not fairly and lawfully considered.

19. Alternatively, if a task order under a GSA contract is issued and the award to a currently unknown entity is permitted to actually mobilize and begin performance or if an NTP has already been issued continue performance, this Court might ultimately determine that, although the award should have been made to DCMS-ISA, it would now be too costly to disturb the incorrect award to awardee precisely because of the excessive cost to the DHS of having awardee begin performance and demobilize, and then having DCMS-ISA mobilize and perform.

20. If preliminary injunctive relief is not granted the DHS will be allowed to have a currently unknown entity mobilize and commence performance or to continue performance on the contract, thus diminishing the likelihood that this Court will recommend the appropriate corrective action if it finds that the SOLICITATION was improperly awarded. Without injunctive relief from this Court, DCMS-ISA may effectively be precluded from meaningful relief and will suffer irreparable harm as a direct result of the DHS's failure to consider DCMS-ISA's proposal as the lowest responsive bid on the SOLICITATION. DCMS-ISA will suffer irretrievable money losses as well, if DCMS-ISA is unfairly deprived of the opportunity to fully and fairly litigate its bid protest as Congress determined and intended when it enacted the

statutory framework. *Art-Metal - USA, Inc. v. Solomon*, 473 F.Supp. 1, 4 n.4 (D.D.C. 1978); *Pan American World Airways, Inc. v. Marshall*, 439 F.Supp. 487, 497 (S.D.N.Y.1977); see also *Tri-State Generation v. Shoshone River Power. Inc.*, 805 F.2d 351, 355 (10th Cir.1986) (where plaintiff cannot collect monetary damages, harm is irreparable.).

21. Absent the granting of the injunction, DCMS-ISA will be effectively deprived of a remedy for DHS's violation of DCMS-ISA clear right, under the terms of the SOLICITATION and the FAR, to have its proposal and the proposals of other SDVOSBs be fairly and lawfully evaluated. As a result of the DHS's arbitrary and capricious conduct, DCMS-ISA faces the loss of the profits which are not recoverable. A contractor seeking damages from the award of a contract to a competitor in the Court of Federal Claims can only recover damages which do not exceed the bid preparation costs. The Court of Federal Claims cannot award recovery of lost profits or of the losses caused by liquidation of assets. *Keco Indus. v. United States*, 192 Ct.Cl. 773, 785, 428 F.2d 1233,1240 (1970); see also *S&W Mechanical v. City of Homerville*, 682 F.Supp. 546, 547-548 (M.D. Ga. 1988).

22. The effect of the DHS's action is to impose irreparable harm upon DCMS-ISA and to deprive DCMS-ISA of a meaningful opportunity to have its proposal and the proposals of other SDVOSBs be fairly and lawfully evaluated. The denial of the right to have its proposal fairly and lawfully considered constitutes an irreparable injury as does the loss of a major contract. Additionally, DCMS-ISA's remedy at law is clearly inadequate. Absent an injunction and a temporary restraining order, DCMS-ISA would effectively lose the right to be awarded the SOLICITATION.

**2. <u>DCMS-ISA Will Succeed On The Merits Of Its Claim</u>**

23. DCMS-ISA's proposal was rejected because DCMS-ISA "failed to demonstrate any relevant experience of its own." *Attachment 7, page 3 of 4.* In the case of DCMS-ISA's proposal, the DHS did not consider the "teaming agreement" between DCMS-ISA and AM-GARD relevant to the past performance requirements of the proposal.

24. The past performance of the "team" in a teaming arrangement including a subcontractor of greater experience is to be considered the same as the contractor. 48 C.F.R

9.602 clearly encourages teaming arrangement in government procurements to enable the companies involved to complement each others unique capabilities.

25. The SBA in making size determination clearly considers treats the subcontractor in a teaming agreement as a member of the joint venture for all purposes. 13 C.F.R 121.103 states:

> (4) A contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes. An ostensible subcontractor is a subcontractor that performs primary and vital requirements of a contract, or of an order under a multiple award schedule contract, or a subcontractor upon which the prime contractor is unusually reliant. All aspects of the relationship between the prime and subcontractor are considered, including, but not limited to, the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work), **agreements** between the prime and subcontractor (such as bonding assistance or the **teaming** agreement), and whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation.

26. The DHS in responding to pre-proposal questions provided that the past performance experience of team members, with teaming agreements attached to the proposal would suffice if the SDVOSB was less experienced. *Attachment 3, Questions 1-4.*

27. In the case of the overall SDVOSB community a proposer with $5,000,000 per year of apparently relevant performance was rejected because the estimate for this proposal was $9.5 million per year. *Attachment 6.* It is unknown whether this proposer submitted past performance experience with different wage rates and therefor a lesser dollar value of "relevant experience." Since the DHS will not provide the information necessary to contact all the SDVOSB proposers it is impossible to determine whether this rejection was also improper.

### 3. <u>The Harm To DCMS-ISA's Outweighs Any Harm To The DHS.</u>

28. The DHS faces no irreparable harm if a Temporary Restraining Order and Preliminary Injunction are granted; but maybe a slight delay in the execution and performance of the SOLICITATION. On the other hand, DCMS-ISA's will definitely suffer irreparable

monetary injury; that is, DCMS-ISA's will for certain lose the contract resulting from the SOLICITATION.

29. The SOLICITATION is for armed guard services, certainly necessary but hardily offensive to the national security. The DHS can simply allow the incumbent contractor, AM-GARD, INC. to provide services pending the outcome of this bid protest, which, at worst, would be no more than 30 days past July 15, 2008. Regardless, according to the DHS, proposals on the GSA task order are not due until July 14, 2008, which is ample time for the administrative record to be produced and a TRO hearing to be held.

30. Thus, a balancing of the hardships posed to DCMS-ISA's and the DHS by the prospect of a Temporary Restraining Order and preliminary injunctive relief demonstrates that DCMS-ISA will suffer decidedly more severe harm if the Temporary Relief Order and Preliminary Injunction are denied than the DHS will suffer if the injunction is granted.

31. Since the balance-of-hardship test weighs heavily in favor of DCMS-ISA, a Temporary Restraining Order and/or an injunction should be issued "if, at least, grave or serious questions are presented." Jones, supra, 704 F.2d at 715 (quoting *North Carolina State Ports Authority v. Dart Containerline Co.*, 592 F.2d 749, 750 (4th Cir. 1979)); Chalk, supra, 710 - 711.

32. DHS's rejection of DCMS-ISA request to competition restrict the SOLICITATION is in violation of the Competition in Contracting Act of 1984 which constitute, at the very least, questions of a grave and serious nature. Thus, DCMS-ISA is entitled to an injunction even without establishing a likelihood of success on the merits. Moreover, as the previous sections illustrate, DCMS-ISA's claim is likely to be vindicated on the merits.

**4. The Public Interest Will Be Served If A Temporary Restraining Order/Preliminary Injunction Is Issued**

33. Finally, this Court must consider whether issuance of a Temporary Restraining Order and Preliminary Injunction is in the public interest. Government agencies must comply

with the laws, executive orders, and regulations under which they operate. *Service v. Dulles*, 354 U.S. 363 *(1957); Pan American World Airways. Inc. v. Marshall*, 439 F.Supp. 487 (S.D. N.Y. 1977). The public interest is not served when an agency fails to follow its own regulations and fails to act in a lawful and honest manner. *Art-Metal - USA. Inc. v. Solomon*, 473 F. Supp. 1, 8 (D.D.C. 1978).

34. In addition, to the financial benefit, the issuance of a temporary restraining order and preliminary injunction would serve the purpose of reinstating the public expectation, belief and trust on the public system and procurement contracts.

35. Finally and even more importantly a decision directing the DHS to conform to the requirements of its SOLICITATION will foster and encourage other SDVOSB's to establish veteran and service-disabled veteran owned businesses.

37. As herein it is demonstrated, the DHS has failed to comply with applicable laws and regulations. The DHS has abrogated the fundamental policy which underlies the Competition in Contracting Act of 1984; that the public is best served by free and open competition. To this end, it is essential that this competition, unless the national interest is truly threatened, be subject to fair and meaningful review. Accordingly, the public interest will be served by issuance of a Temporary Restraining Order and a subsequent preliminary injunction blocking the harmful results of the DHS's foreseeable unlawful conduct.

//

//

//

**CONCLUSION**

For all the foregoing reasons, DCMS-ISA respectfully requests that this Court issue a Temporary Restraining Order and Preliminary Injunction enjoining the DHS from issuing the Notice to Proceed, or, if a Notice to Proceed has already been issued and the currently unknown entity has commenced performance, directing the DHS to suspend all performance, until such time as the Court makes a determination and rules on DCMS-ISA's Request for Declaratory Judgment and Permanent Injunctive Relief.

Dated: June 18, 2008

Respectfully submitted,

William L. Bruckner
BRUCKNER & WALKER
4550 Kearny Villa Road, Suite 209
San Diego, CA 92123
(858) 565-8300 Telephone
(858) 565-0813 Facsimile
bill@brucknerwalker.com

Attorneys for DCMS-ISA, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on June 19, 2008 I cause to be served overnight mail, copies of the following documents: **"COMPLAINT; APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; DECLARATION OF WILLIAM L. BRUCKNER"** addressed as follows

U.S. Dept of Justice
Commercial Litigation Branch
Civil Division
Classification Unit, 8th Floor
1100 L Street, NW
Washington DC 20530

Attorney for Defendant

Tiffany Adams